MetLife Insurance Company
of Connecticut and General
American Life Insurance Company,

    Plaintiffs and Counter-
    Defendants,

v.                                                   **ORDER**

Thomas Petracek, Minnesota Estate
Service, Inc., Michael J. Antonello,
and Michael J. Antonello &
Associates, Ltd.,

    Defendants, Counter-
    Plaintiffs and Third-
    Party Plaintiffs,

v.

Jean Philipp,

    Third-Party Defendant.

    Rebecca Egge Moos, Esq., Susan E. Gustad, Esq. and Bassford Remele, P.A., 33 South Sixth Street, Suite 3800, Minneapolis, MN 55402 and Richard S. Cozza, Esq. and Paul, Hastings, Janofsky & Walker, 191 North Wacker Drive, Thirtieth Floor, Chicago, IL 60606.

    Joseph A. Wentzell, Esq. and Wentzell Law Office, 2812 Anthony Lane South, Suite 200, St. Anthony, MN 55418 and Aaron M. McParlan, Esq., Lindsey A. Davis, Esq. Thomas B Caswell III, Esq. and Zelle, Hoffman, Voelbel & Mason, 500 Washington Avenue South, Suite 4000, Minneapolis, MN 55415.

    This matter is before the court upon the motion of plaintiff and counter-defendant MetLife Insurance Company of Connecticut

("MICC")[1] for partial summary judgment and MICC, plaintiff and counter-defendant General American Life Insurance Company ("General American")[2] and third-party defendant Jean Philipp's ("Philipp")[3] motion for partial judgment on the pleadings. After a review of the file, record and proceedings herein, and for the following reasons, the court grants both motions.

**BACKGROUND**

In this breach of contract action, MICC and General American seek return of commissions from their former agents, defendants Michael J. Antonello ("Antonello"),[4] Thomas Petracek ("Petracek"),[5] Minnesota Estate Services, Inc.[6] and Michael J. Antonello &

---

[1] In 2005, MetLife, Inc. acquired Travelers Life and Annuity Company and later changed its name to MetLife Insurance Company of Connecticut. MICC is incorporated in Connecticut, and its principal place of business is in Hartford, Connecticut. (Compl. ¶¶ 1, 15.)

[2] General American is incorporated in Missouri, and its principal place of business is in St. Louis, Missouri. (Compl. ¶ 2.)

[3] Philipp resides in St. Louis, Missouri. (Letter [Doc. No. 73] 1.)

[4] Antonello is a citizen of Minnesota. (Compl. ¶ 5.)

[5] Petracek is a citizen of Florida. (Countercl. ¶ 1.)

[6] Minnesota Estate Services, Inc. is either a Minnesota corporation with its registered office in Apple Valley, Minnesota (Compl. ¶ 4) or a Florida corporation with its registered office in Naples, Florida (Countercl. ¶ 2.)
See http://www.sunbiz.org/COR/2008/0222/16106285.Tif (noting
(continued...)

Associates, Ltd.[7] (collectively, "Defendants"). Defendants entered into agreements with MICC and General American to sell life insurance policies in 2003 and 2004 (the "Selling Agreements"). (See Countercl.[8] Exs. A-D.) The policies contained a two-year contestability period during which MICC and General American could challenge statements made in the applications for insurance. In 2005, General American fraud investigator Philipp discovered that policies sold by Defendants exhibited a pattern of ownership changes occurring shortly after the contestability period lapsed. (See Davis Aff. Ex. 4.)

Thereafter, Philipp investigated the policies sold by Defendants. In May 2005, Defendants participated in a telephone conference with Philipp during which she questioned them about information provided on their clients' policy applications. (Countercl. ¶ 55.) In the of course her investigation, Philipp also contacted other insurers with whom Defendants did business. (Id. Exs. 3-5.) In April 2005, she called nonparty Lincoln Financial to discuss insurance applications submitted by Defendants

---

[6](...continued)
inchoate merger of two corporations).

[7] Michael J. Antonello & Associates, Ltd., is a Minnesota corporation with its principal place of business in New Brighton, Minnesota.

[8] All citations of the counterclaim are to the corrected amended counterclaim and corrected amended third-party complaint. (Doc. No. 15.)

and said that "MetLife does not allow [its] agents to broker life settlement deals."[9]  (See Davis Aff. Exs. 6-7; Defs.' Resp. Mem. 22.)  According to Defendants, Philipp also contacted MICC and nonparty insurers Mass Mutual, Hartford and Sun Life.  (See Countercl. ¶ 64.) Defendants assert that Philipp "encouraged these other insurers to join General American's campaign of retaliation against Defendants so as to actively discourage secondary market transactions." (Id. ¶ 65.)  Defendants further assert that Philipp referred to their practices as "dirty."  (Id. ¶ 51.)  According to Defendants, the investigation was a "witch-hunt" resulting from an "undisclosed shift in policy" against life-settlement contracts by MICC and General American.  (Countercl. ¶ 43.)

As a result of the investigation, Philipp discovered that some of Defendants' life insurance applications under-reported the amount of additional in-force or pending life insurance coverage. (Davis Aff. Ex. 5 at 2.)  Following the investigation, MICC and General American rescinded policies sold by Defendants. (Countercl. ¶ 70.)  On July 1, 2005, General American cancelled its Selling

---

[9] A life-settlement contract, also called a secondary-market arrangement or stranger-owned life insurance contract, takes various forms.  The court refers to such arrangements generically as life-settlement contracts.  Common to all is the transfer of beneficial interests of a life insurance policy to a third party, who may lack an insurable interest.  The third party then pays the premiums and collects the benefits upon the death of the insured. Because an investor pays the premiums, the policy does not lapse and thus becomes nearly certain to pay death benefits.  Minnesota prohibited such transactions in 2009.  See Minn. Stat. §§ 60A.0783–60A.0786.

4

Agreements with Defendants. (Pls.' Reply 6.) Around that time, MICC also cancelled its Selling Agreements. (Id.) The other insurers cancelled their selling agreements with Defendants between November 2005 and April 2009. (Id. at 7.)

On November 19, 2008, MICC and General American began this action, claiming that Defendants breached the Selling Agreements by failing to return commissions on the rescinded policies. On April 15, 2009, Defendants counterclaimed and filed a third-party claim against Philipp. Defendants claim breach of contract against MICC and General American, and fraudulent and negligent misrepresentation, fraudulent nondisclosure, tortious interference with contractual relations, vicarious liability and violation of Section 1 of the Sherman Antitrust Act ("Section 1") against MICC, General American and Philipp. The court now considers MICC's motion for partial summary judgment on its breach of contract claim and MICC, General American and Philipp's motion for partial judgment on the pleadings on Defendants' Section 1 claim.[10]

---

[10] At oral argument on January 29, 2010, the parties agreed to entry of partial summary judgment in favor of MICC on its breach of contract claim. (See also Defs.' Mem. Opp'n [Doc. No. 91] 4, 6.) Therefore the court grants that motion.

**DISCUSSION**

**I.  Standard of Review**

The court applies the same standard to motions under Federal Rules of Civil Procedure 12(c) and 12(b)(6). Ashley County, Ark. v. Pfizer, Inc., 552 F.3d. 659, 665 (8th Cir. 2009) (citation omitted). Thus, to survive a motion for judgment on the pleadings, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level. See Twombly, 550 U.S. at 555. "[L]abels and conclusions" are not sufficient, and are not entitled to an assumption of truth. Iqbal, 129 S. Ct. at 1949 (quotations and citation omitted).

The court does not consider matters outside the pleadings under Rule 12(c). See Fed. R. Civ. P. 12(d). The court may, however, consider matters of public record and materials that are "necessarily embraced by the pleadings." See Porous Media Corp. v.

6

Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (citation and internal quotation marks omitted). The court finds that evidence of Philipp's investigation for General American contained in the Davis affidavit and the cancellation dates of the various selling agreements are necessarily embraced by Defendants' Section 1 counterclaim and third-party complaint. Therefore, the court considers this information without converting the motion to one for summary judgment.

**II. Section 1 of the Sherman Antitrust Act**

Defendants claim that MICC and General American agreed to a coordinated boycott of Defendants because the life-settlement contracts that Defendants brokered threatened insurers' monopsony over life insurance policies. To prove a Section 1 violation, Defendants must show an "agreement in the form of a contract, combination, or conspiracy that imposes an unreasonable restraint on trade." Concord Boat Corp. v. Brunswick Corp., 207 F.3d 1039, 1058 (8th Cir. 2000) (citing 15 U.S.C. § 1); accord Twombly, 550 U.S. at 556. If Defendants plead facts that make the existence of an agreement plausible, then the court considers whether the restraint created was unreasonable. Concord Boat, 207 F.3d at 1058.

Where, as here, direct evidence is lacking, Defendants may plead and prove a Section 1 violation by circumstantial evidence. Monsanto v. Spray-Rite Serv. Corp., 465 U.S. 752, 768 (1984); (see

7

also Defs.' Resp. 14-15.)  Facts showing coordinated conduct "in a context that raises a suggestion of a preceding agreement, not merely conduct that could just as well be independent action" are sufficient to show an agreement for purposes of a motion for judgment on the pleadings.  See Twombly, 550 U.S. at 557.  Conduct which "could just as well be independent action" does not, however, suggest a conspiracy.  See id.; Windage, LLC v. U.S. Golf Ass'n, No. 07-4897, 2008 WL 2622965, at *3 (D. Minn. July 2, 2008) (citing Twombly).

Defendants argue that the cancellation of their selling agreements by various insurers in July and November 2005, April 2006 and January and August 2007 constitutes coordinated conduct suggestive of a preceding agreement.  (See Pls.' Reply 7.)  The court disagrees.  Rescission of the selling agreements over a period of two years by different insurers suggests – if anything – independent decisions by the insurers rather than coordinated conduct.  Cf. Intervest Fin. Servs., Inc. v. S.G. Cowen Sec. Corp., 206 F. Supp. 2d 702, 715-16 (E.D. Pa. 2002) (thirteen-month passage of time too attenuated to raise inference of concerted action).

Moreover, even if the court construed the cancellation of selling agreements over this expansive time frame as coordinated conduct, Defendants' claim fails because no facts support the inference that the insurers' actions were due to agreement rather than "lawful parallel conduct."  Twombly, 550 U.S. at 556.

Defendants first argue that Philipp's conversations with the other insurers show preceding agreements. Insurers are entitled, however, to investigate fraudulent behavior. See Cement Mfrs. Protective Ass'n v. United States, 268 U.S. 588, 603–04 (1925). Philipp discussed and discovered nondisclosure of coverage. (See Davis Aff. Exs. 3–7.) Moreover, no facts before the court suggest agreement or even encouragement to join a "campaign of retaliation" against Defendants. (See id.)

Defendants next argue that life-settlement agreements cause insurers "to realize increased costs" thus suggesting that the insurers had a financial incentive to refuse to deal with Defendants. (Countercl. ¶ 37; Defs.' Resp. 17.) If true, Defendants' assertion suggests only that insurers have an independent incentive to stop working with agents who broker life-settlement agreements. Doing so, however, does not require coordinated action. Therefore, considering Defendants' counterclaim and third-party claim as a whole, the facts show that the insurers' conduct was "just as well ... independent action" and consistent with "lawful parallel conduct." Defendants have not alleged facts that allow the court to draw a reasonable inference of an agreement between the insurers to boycott them. Absent an inference of an agreement, the court need not consider the

reasonableness factor. Therefore, partial judgment on the pleadings in favor of MICC, General American and Philipp is warranted.

Lastly, Defendants request that the court grant leave to amend their counterclaim and third-party claim instead of rendering judgment on the pleadings. In support, Defendants argue that discovery during the months preceding this motion revealed additional facts. The court relied on those additional facts, however, in its determination that judgment on the pleadings is warranted. Defendants' failure to state a Section 1 claim, even after discovery began, counsels against granting leave to amend. Accordingly, the court grants judgment on the pleadings to MICC, General American and Philipp.

## CONCLUSION

Based on the above, **IT IS HEREBY ORDERED** that MICC's motion for partial summary judgment [Doc. No. 51] is granted and MICC, General American and Philipp's motion for partial judgment on the pleadings [Doc. No. 65] is granted.

Dated: May 24, 2010

                                                 s/David S. Doty
                                                 David S. Doty, Judge
                                                 United States District Court